UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



LACEY SCOTT,

    Petitioner,

-v-

UNITED STATES OF AMERICA,

    Respondent.

UNITED STATES OF AMERICA

-v-

LACEY SCOTT,

    Defendant.

No. 16-cv-1618 (RJS)

OPINION & ORDER

No. 12-cr-154 (RJS)

RICHARD J. SULLIVAN, Circuit Judge:

  Lacey Scott ("Petitioner"), proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, alleging that his attorneys provided ineffective assistance of counsel in connection with his sentencing. (Doc. No. 58 ("Petition").)[1] For the reasons set forth below, the Petition is DENIED.

## I. BACKGROUND

  Petitioner was born in Jamaica on October 27, 1981 and immigrated to the United States on a permanent resident visa on February 2, 1988. (Doc. No. 47 at 1–2.) In 2003, Petitioner was

---

[1] Unless otherwise indicated, all docket citations refer to the docket in Petitioner's criminal case, *United States v. Scott*, 12-cr-154 (RJS). In ruling on the Petition, the Court has considered Petitioner's habeas petition (Doc. No. 58 ("Petition")), the government's memorandum in opposition and the exhibits attached thereto (Doc. No. 60 ("Opp'n")), and Petitioner's reply (Doc. No. 62 ("Reply")).

convicted of criminal sale of marijuana in the Mount Vernon City Court and sentenced to 90 days' imprisonment. (Opp'n Ex. A ("Plea Agreement") at 4.) Two years later, in 2005, Petitioner was convicted and sentenced in Westchester County Court to one year's imprisonment for fourth-degree criminal possession of a narcotic drug. (*Id.*) That same year, in the Southern District of New York, Petitioner was convicted of (1) possession of a firearm with an obliterated and altered serial number in violation of 18 U.S.C. § 922(k), (2) possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(b)(1)(c), and (3) possession of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i). *See United States v. Scott*, No. 04-cr-01074 (CM) (S.D.N.Y. Nov. 11, 2005), Doc. No. 16 ("2005 Federal Convictions"). On November 18, 2005, Judge McMahon sentenced Defendant to an aggregate term of 87 months' imprisonment on the 2005 Federal Convictions. *Id.*

As a result of these convictions, Petitioner was deported to Jamaica on August 29, 2006. (Doc. No. 52 at 3.) Nevertheless, following his deportation, Petitioner re-entered the United States without permission, and on December 26, 2011, he was arrested in the Bronx by officers of the New York City Police Department after a traffic stop while in possession of a firearm. (*Id.*) On February 15, 2012, a federal grand jury returned an indictment charging Petitioner with (1) illegal reentry in violation of 8 U.S.C. §§ 1326(a), (b)(2), and (2) possession of a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 1.) On May 1, 2013, the government issued a superseding indictment in which the order of the Counts is flipped: thus, Count One is the firearms charge and Count Two is the illegal reentry charge. (Doc. No. 48.)

On September 7, 2012, Petitioner – who was then represented by Kelly Ann Moore and Nicholas Schretzman of Morgan, Lewis & Bockius LLP (together, "Counsel") pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A – moved to suppress the weapon, statements, and other

evidence collected during the police stop on December 26, 2011. (Doc. No. 13.) Petitioner argued that the stop violated the Fourth Amendment because the arresting officers lacked reasonable suspicion to stop the vehicle, therefore requiring the exclusion of any evidence seized in the ensuing search. (Doc. No. 14 at 2.) Petitioner also argued that the search was independently unreasonable because the officers did not have a warrant, and no exceptions to the Fourth Amendment's warrant requirement applied. (*Id.* at 9–12.)

On December 3, 2012, the Court ruled in part on that motion, finding that Petitioner did not have standing to challenge the *search* because Petitioner lacked a reasonable expectation of privacy as a non-owner passenger in a vehicle that was not a livery cab. (Doc. No. 41 at 1 n.1 (citing *United States v. Bulluck*, No. 09-cr-652, 2010 WL 1948591 at *9–13 (S.D.N.Y. May 13, 2010)).) On January 24, 2013, the Court further ruled that the officers had reasonable suspicion to *stop* Petitioner in light of the arresting officers' testimony – which the Court deemed credible – that they saw the car drive through a stop sign. (Doc. No. 67 at 32:9–17.)

On May 13, 2013, Petitioner pleaded guilty to the felon-in-possession count pursuant to a plea agreement with the government; he then proceeded to a bench trial based on stipulated facts as to the illegal reentry count, principally to preserve his appellate rights on legal issues related to that count. (Doc. No. 50 at 1–2; Plea Agreement at 5 n.2.) Under the terms of the plea agreement, the parties stipulated that Petitioner had ten criminal history points, placing him in criminal history category V, as well as an offense level of 23; the resulting Guidelines range was 84 to 105 months' imprisonment. (Plea Agreement at 3–5.) The agreement further provided that neither party would seek an upward or downward departure under the Sentencing Guidelines, but allowed either party to seek a variance based on the factors set forth in 18 U.S.C. § 3553(a).

Before accepting Petitioner's guilty plea, the Court engaged Petitioner in a lengthy colloquy pursuant to Rule 11 of the Federal Rules of Criminal Procedure to ensure that Petitioner understood his rights, the nature of the charges against him, and the consequences of pleading guilty. (Opp'n Ex. B ("Plea Tr."), at 5:1–16:24.) The Court also reviewed the plea agreement with Petitioner and confirmed that Petitioner discussed both the plea agreement and the consequences of pleading guilty with his attorneys. (*Id.*) The Court also confirmed that, prior to the plea proceeding, Petitioner reviewed and signed an advice of rights form that summarized his rights as a criminal defendant and the consequences of pleading guilty before trial. (*See* Opp'n Ex. C ("Advice of Rights Form").) The Court also advised Petitioner that, as a result of his guilty plea, he was waiving his right to appeal the Court's denial of his suppression motion. (*Id.* at 2.) Finally, the Court asked Petitioner to articulate what he had done that made him guilty of the offense charged in Count One, and confirmed that the government had sufficient evidence to support a conviction in the event the case went to trial. (Plea Tr. at 19:14–20:9.) The following day, the Court issued its verdict on Count Two, concluding that the government had proven each element of the offense beyond a reasonable doubt and finding Petitioner guilty. (Doc. No. 50 at 4.)

Prior to sentencing, the United States Probation Office issued its Presentence Investigation Report ("PSR"), which calculated a different Guidelines range than the one to which the parties had stipulated in the plea agreement. Specifically, the PSR concluded that the 2005 Federal Convictions yielded three criminal history points rather than six, resulting in criminal history category IV. Therefore, based on offense level 23 and criminal history category IV, the Probation

Office found the applicable Guidelines range to be 70 to 87 months and recommended a sentence of 70 months.

On September 20, 2013, Counsel submitted a fifteen-page sentencing memorandum along with thirty-one exhibits, including numerous letters from Petitioner's family members and friends. (Doc. No. 51.) The memorandum advocated for leniency and requested a sentence below the 70 months recommended in the PSR. (Doc. No. 51.) On September 27, 2013, the government submitted a sentencing memorandum urging a sentence above the 84 to 105 months agreed to in the plea agreement based on Petitioner's access to guns, his criminal history, and the failure of his prior sentences to deter him from engaging in criminal conduct. (Doc. No. 52 at 7.) At the sentencing proceeding on October 4, 2013, the Court concluded that Petitioner had ten criminal history points, resulting in a criminal history category V, with a corresponding Guidelines range of 84 to 105 months. (Doc. No. 71 ("Sentencing Tr.") at 13:15–19.) The Court then sentenced Petitioner to 108 months on each count, to run concurrently. (Doc. No. 54.) The Court justified the above-guidelines sentence based on (1) Petitioner's extensive criminal history, and (2) the failure of Petitioner's previous sentence to deter him from further criminal conduct. (Sentencing Tr. at 30–32.)

On October 17, 2013, Petitioner filed a notice of appeal with the Second Circuit, challenging the procedural reasonableness of his sentence based on the Court's determination of his criminal history category and Guidelines range. *See United States v. Scott*, 616 F. App'x 431 (2d Cir. 2015). The Second Circuit affirmed the Court's judgment and sentence on September 1, 2015. *Id.* at 432.

On March 1, 2016, Petitioner filed this Section 2255 Petition alleging ineffective assistance of counsel both before and during sentencing. Specifically, Petitioner argues that Counsel failed

5

to advise him of the Southern District of New York's Fast Track Program for illegal reentry defendants, failed to move for a variance or departure based on his likely deportation, and should not have advised him to waive his right to appeal the Court's ruling on the suppression motion by pleading guilty. The government submitted its brief in opposition to the Petition on May 13, 2016, and Petitioner filed his reply on February 22, 2017.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, "a federal prisoner may move the sentencing court to vacate, set aside, or correct the sentence on the ground that such sentence was illegally imposed." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009). Relief is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal citations and quotation marks omitted). If proven, a claim of ineffective assistance of counsel is a constitutional error that warrants relief under Section 2255. *See United States v. Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000) (citing *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998)).

The Sixth Amendment right to counsel requires that a criminal defendant be provided "the effective assistance of counsel." *United States v. Daugerdas*, 915 F. Supp. 2d 493, 495 (S.D.N.Y. 2013) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). This right to effective assistance applies equally to trial counsel and appellate counsel. *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (citing *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985)). To prevail on an ineffective assistance of counsel claim, a petitioner must prove that (1) his counsel's performance was deficient, and (2) he was prejudiced by the deficient performance. *Gueits v. Kirkpatrick*, 612 F.3d 118, 122 (2d Cir. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). An

attorney's performance is considered deficient under the Sixth Amendment only if it "fell below an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688. However, in determining whether an attorney's performance was objectively unreasonable, a court must view the attorney's conduct in light of "the circumstances counsel faced at the time of the relevant conduct." *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008) (internal quotation marks and citations omitted); *see also McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) ("[A] court may not use hindsight to second-guess counsel's tactical choices." (internal quotation marks and citations omitted)). But even if a petitioner is able to establish that his counsel's conduct was objectively unreasonable, he must still demonstrate prejudice, which means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. While this prejudice prong "does not require a showing that counsel's actions more likely than not altered the outcome," it does require a petitioner to show that "[t]he likelihood of a different result [was] substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

## III. Discussion

Petitioner raises three ineffective assistance of counsel arguments. First, Petitioner argues that Counsel was ineffective for not informing him of his eligibility for the Southern District of New York's so-called "Fast Track" program, which provides for a reduced sentence and accelerated deportation of defendants who plead guilty to illegal reentry under 8 U.S.C. § 1326. (Petition ¶ 5.) Second, Petitioner contends that Counsel was ineffective in failing to move for a downward departure or variance based on the high likelihood that he would be deported after his sentence was completed. (*Id.* ¶ 7.) Finally, Petitioner maintains that Counsel was ineffective for advising him to waive his right to appeal the Court's denial of his suppression motion as a

7

condition of his guilty plea. (*Id.* ¶ 9.) The Court considers each argument in turn and concludes that all are without merit.

### A. Failure to Advise Petitioner of the Fast Track Program

Petitioner claims Counsel was ineffective in failing to advise him of his eligibility for a possible sentence reduction based on the Southern District of New York's Fast Track program. The district promulgated its Fast Track program policy in a March 5, 2012 memorandum, in accordance with a January 31, 2012 memorandum of the Deputy Attorney General, that laid out eligibility requirements for illegal reentry defendants. (Opp'n Ex. E.) The policy provides that, upon the government's motion, a court can depart downward four levels from the applicable Guidelines range. (*Id.*; *see also* U.S. Sentencing Guidelines Manual § 5K3.1 (2013).) However, as relevant here, a defendant is ineligible for the program if he (1) has seven or more criminal history points; (2) is charged with multiple counts of which only one is illegal reentry; or (3) has a prior conviction for a "serious violent felony" as defined in 18 U.S.C. § 3559(c)(2)(F)(i). (Opp'n Ex. E at 2.)

Here, Petitioner was ineligible for the Fast Track program under each of these three circumstances. First, Petitioner was ineligible because he had more than seven criminal history points. At sentencing, the Court specifically concluded that Petitioner had ten criminal history points, which put Petitioner in criminal history category V and resulted in a Guidelines range of 84 to 105 months. (Sentencing Tr. at 13:15–18.) The Second Circuit affirmed the procedural reasonableness of Petitioner's sentence and the correctness of the Court's calculation of criminal history – a conclusion that Petitioner does not contest in the Petition. *See United States v. Scott*, 616 F. App'x 431 (2d Cir. 2015). (*See* Opp'n.) Accordingly, there can be no dispute that Petitioner's ten criminal history points alone rendered him ineligible for the Fast Track program.

But even if the Court had adopted the PSR's conclusion that Petitioner had seven criminal history points, he would still have been ineligible for the Southern District's Fast Track program since he was charged with another crime in addition to illegal reentry. (Doc. No. 48 at 1.) The Fast Track policy requires that a defendant be charged solely with illegal reentry under 8 U.S.C. § 1326 to be eligible. (Opp'n Ex. E at 1.) Here, Petitioner was also charged with, and pleaded guilty to, possession of a firearm after being convicted of a felony under 18 U.S.C. § 922(g)(1). (Doc. No. 48.) Therefore, Petitioner also would have been ineligible for the program based on the two-count indictment.

Finally, Petitioner was ineligible for the Fast Track program based on his prior conviction for a serious violent felony. The Fast Track program defines a serious violent felony as, *inter alia*, "firearms possession as described in section 924(c)." (Opp'n Ex. E at 2 (internal parentheses omitted).) In 2005, Petitioner pleaded guilty to possession of a firearm during and in relation to a drug trafficking offense pursuant to 18 U.S.C. § 924(c)(1)(A)(ii) – one of the 2005 Federal Convictions. *See Scott*, No. 04-cr-01074, Doc. No. 16. Therefore, Petitioner also would have been ineligible for the program based on his prior conviction.

Accordingly, Counsel's failure to advise Petitioner of his eligibility for a possible sentence reduction under the Fast Track program was neither objectively unreasonable, since Petitioner was ineligible on three distinct grounds, nor prejudicial, since Petitioner's sentence would have been the same regardless of whether he had been informed of the program. *See Martinez-Lorenzana v. United States*, No. 12-cv-9195 (CM), 2014 WL 6813219, at *1–2 (S.D.N.Y. Dec. 2, 2014) (finding the fact that defense attorney did not pursue the Fast Track program not prejudicial to the defendant since the defendant was ineligible).

### B. Failure to Move for a Downward Variance or Departure

Petitioner next claims that Counsel was ineffective for failing to seek a downward departure or variance based on his likely deportation after the completion of his sentence. (Petition ¶ 7.) Petitioner claims the prospect of his deportation should have been considered as a mitigating circumstance because it made him ineligible for both the Residential Drug Abuse Program ("RDAP") and a placement in a halfway house. (*Id.* ¶ 8.) He further contends that, after the completion of his sentence, he will likely spend six to eight months in a U.S. Immigration and Customs Enforcement holding facility awaiting deportation. (*Id.*) Petitioner therefore asserts that Counsel should have presented these arguments in a motion or at sentencing and that doing so would have resulted in a downward departure and/or variance. (*Id.*)

But contrary to Petitioner's assertions, Counsel *did* make arguments for a downward variance based on his immigration status. The plea agreement between the government and Petitioner provided that either party could seek a variance based on the factors set forth in 18 U.S.C. § 3553(a) (Plea Agreement at 4), and Petitioner's sentencing memorandum specifically discussed the Court's discretion in varying from the Guidelines sentence based on the Section 3553(a) factors. (Doc. No. 51 at 2–14.) The memorandum also specifically cited the Guidelines' recognition of cultural assimilation as a mitigating factor at sentencing and how Petitioner's continual residence in the United States from ages six to twenty-five merited consideration by the Court under Section 3553(a). (Doc. No. 51 at 10–11; Sentencing Tr. at 16: 20–25.) The Court clearly considered Counsel's arguments in relation to Petitioner's likely deportation and expressly referenced the possibility of Petitioner's deportation in imposing the sentence. (*Id.* at 34:1–3, 22–25.)

The Court nevertheless imposed an above-Guidelines sentence of nine years (*id.* at 31–32), citing (1) Petitioner's extensive criminal history, which included additional convictions that did not factor into the calculation of his criminal history category; and (2) the failure of Petitioner's previous 87-month sentence to deter him from further criminal conduct as reasons justifying an above-Guidelines sentence (*id.* at 30–32). Under the circumstances, Counsel's failure to specifically raise Defendant's ineligibility for RDAP or placement in a halfway house was not deficient. *See Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (holding that counsel need not "advance every nonfrivolous argument that could be made" in the context of an ineffective assistance claim). Nor has Petitioner demonstrated prejudice, since there is no reasonable possibility that Petitioner would have received a downward variance given the Court's imposition of an above-Guidelines sentence of 108 months.

As for Petitioner's contention that Counsel should have moved for a downward *departure*, the plea agreement expressly provided that neither party would move for an upward or downward departure from the Guidelines range, and that any such departure was not warranted on the facts of the case. (Opp'n Ex. A. at 4.) Consequently, Counsel could not have moved for a downward departure without breaching the plea agreement. Thus, it was neither objectively unreasonable nor prejudicial for Counsel to refrain from making a motion that was prohibited under the plea agreement that Petitioner knowingly and voluntarily entered. *See Kawesi v. United States*, No. 04-cr-1106 (LTS), 2011 WL 1560910, at *2 (S.D.N.Y. Apr. 19, 2011) (finding counsel's actions taken for the "benefit of plea agreement" not objectively unreasonable).

C. Waiver of Appeal Regarding the Denial of Petitioner's Suppression Motion

Finally, Petitioner argues that Counsel was ineffective in advising him to waive his right to appeal the Court's denial of his suppression motion when he pleaded guilty to Count One.

(Petition ¶ 9.) Petitioner claims there was "no benefit to waiving his right to appeal" because had he renewed the arguments made in the motion on appeal, he would have prevailed. (*Id.* ¶ 10.)

However, during the plea colloquy, Petitioner acknowledged that he signed the Advice of Rights form, discussed the rights he was giving up with his attorneys, and was satisfied with his counsel's representation throughout the proceedings. (Plea Tr. at 9:5–9, 22–24.) Petitioner's guilty plea – and concomitant waiver of his right to appeal the Court's pretrial rulings – resulted in significant benefits to Petitioner, including a three-level reduction to Petitioner's offense level for acceptance of responsibility, and the government's agreement not to seek an upward departure from the Sentencing Guidelines. (Plea Agreement at 2, 4.) Therefore, Counsel's recommendation that Petitioner enter into the plea agreement, even if it meant waiving his right to appeal the denial of the suppression motion, was a strategic choice that fell within the wide range of acceptable professional assistance contemplated by *Strickland*. *See Costin v. United States*, 588 F. Supp. 2d 280, 285–86 (D. Conn. 2008) (concluding that counsel was not ineffective for the strategic choice to advise petitioner to enter into favorable plea agreement); *Mullins v. United States*, 936 F. Supp. 139, 142 (S.D.N.Y. 1996) ("In light of . . . overwhelming evidence, [the petitioner's] counsel employed the reasonable legal strategy of negotiating a plea that ultimately reduced his client's sentencing exposure by half.").

Additionally, Petitioner has not demonstrated prejudice, since the Court's denial of Petitioner's suppression motion was undoubtedly justified and would almost certainly have been upheld on appeal. The Court found that Petitioner did not have standing to challenge the *search* of the car because he was a non-owner passenger in a vehicle that was not a livery cab, and that the *stop* was constitutional based on the arresting officers' credible testimony that the car went through a stop sign. (Doc. No. 41; Doc. No. 67 at 32:9–17). Indeed, the Court found the officers'

"testimony with respect to the failure to stop at the stop sign to be credible" and that the purported inconsistencies in the officers' testimony did not cause the Court to "doubt the veracity of the officers' testimony with respect to the stop." (Doc. No. 67 at 32:9–17.) On appeal, these credibility determinations in the context of the motion to suppress would be reviewed under a clear error standard, and are given "particularly strong deference." *United States v. Iodice*, 525 F.3d 179, 185 (2d Cir. 2008). Therefore, there is virtually no likelihood that Petitioner would have prevailed on appeal had he not waived his appellate rights by pleading guilty. *See id.*; *United States v. Figueroa*, 425 F. App'x 15, 17 (2d Cir. 2011) (stating that a "credibility assessment is distinctly the province of the district court" (internal quotation marks omitted)).

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that Petitioner has failed to satisfy either prong of the *Strickland* standard with respect to any of Counsel's alleged errors. Accordingly, IT IS HEREBY ORDERED THAT the Petition is DENIED. In addition, because Petitioner has not "made a substantial showing of the denial of a constitutional right," the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack . . . an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, Petitioner may not proceed *in forma pauperis*. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to terminate the motion pending at document number 58 in Case No. 12-cr-154, to close Case. No. 16-cv-1618, and to mail a copy of this Order to Petitioner.

SO ORDERED.

Dated: August 12, 2019
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

14